IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ILLINOIS CENTRAL SWEEPING SERVICE, INC.,** ) ) ) | |
| Plaintiff, ) ) | Case no. 07 C 7003 |
| v. ) ) | Judge James F. Holderman |
| **INTERNATIONAL BROTHERHOOD OF TEAMSTERS and ITS AFFILIATE, LOCAL UNION No. 731, TIM DUNLAP and TOM BROWN, ITS BUSINESS AGENTS,** ) ) ) ) ) ) ) | Magistrate Judge Cole |
| Defendants. ) ) ) | |
| **TEAMSTERS LOCAL UNION No. 731 and TIM DUNLAP,** ) ) ) | |
| Counter-Plaintiffs, ) ) | |
| v. ) ) | |
| **ILLINOIS CENTRAL SWEEPING, LLC d/b/a ILLINOIS CENTRAL SWEEPING SERVICE, INC.,** ) ) ) ) | |
| Counter-Defendant, ) ) ) | |
| and **CHARLES DEVRIES,** ) ) ) | |
| Third-Party Defendant. ) | |

# ANSWER OF DEFENDANTS LOCAL 731, DUNLAP AND BROWNE TO AMENDED COMPLAINT, COUNTERCLAIM AND THIRD-PARTY COMPLAINT

1

Defendants Excavating, Grading, Asphalt, Private Scavenges, Automobile Salesroom Garage Attendants, Linen and Laundry Drivers, Local Union No. 731, affiliated with the International Brotherhood of Teamsters ("Local 731"), Timothy Dunlap ("Dunlap") and Thomas Browne ("Browne") (collectively, "defendants"), by their attorneys Dowd, Bloch & Bennett, answer the amended complaint filed by Illinois Central Sweeping Service, Inc., as follows:

1. Plaintiff, Illinois Central Sweeping Service, Inc. is an Illinois corporation incorporated under the laws of the state of Illinois with its principal place of business at Blue Island, Illinois.

**ANSWER: Defendants deny the allegations of paragraph 1. Answering further, An entity known as Illinois Central Sweeping Service entered into a labor agreement with Local 731 in 2004, but the Illinois Secretary of State has no current record of plaintiff's existence.**

2. International Brotherhood of Teamsters is a union organization with its principal office or place of business at Washington, D.C.

**ANSWER: Defendants admit the allegations of paragraph 2.**

3. Local Union No. 731 is an affiliate of the International Brotherhood of Teamsters with its office at Burr Ridge, Illinois.

**ANSWER: Defendants admit the allegations of paragraph 3.**

4. Tim Dunlap is employed or otherwise holds the position of business agent for Teamsters' Local Union No. 731, and upon information and belief, is a resident of Cook County.

**ANSWER: Defendants admit the allegations of paragraph 4.**

5. Tom Brown is employed or otherwise holds the position of business agent for Teamsters' Local Union No. 731, and upon information and belief, is a resident of Cook County

**ANSWER: Defendants admit that Thomas Browne is a Business Agent for Local 731 but deny that he is a resident of Cook County.**

      6.    Plaintiff, and defendants, International Brotherhood of Teamsters and its affiliate, local union No. 731 were parties to a collective bargaining agreement in force and effect between May 1, 2004 and October 31, 2006.  No employee filed a grievance for wage or benefit payments under the lapsed agreement. At present, a new agreement was voted upon and ratified by plaintiff's employees, however the defendants have refused to accept, ratify or recognize that collective bargaining agreement.

      **ANSWER:  Defendants admit that Local 731 and plaintiff were parties to a collective bargaining agreement effective by its terms from May 1, 2004 through October 31, 2006 (the "CBA").  Defendants further state that Local 731 filed multiple grievances on behalf of plaintiff's employees for unpaid wages and interference with Local 731's performance of its duties as bargaining representative under that agreement.  Defendants further state that plaintiff's employees voted to ratify a new labor agreement but that plaintiff demands Local 731 sign a document that does not reflect the ratified terms, and Local 731 has refused to execute that document.  Defendants deny the remaining allegations of paragraph 6 to the extent they are inconsistent herewith.**

      7.    In April, 2006 Plaintiff bid upon and was awarded a contract to provide street sweeping services to the County of Cook.  Prior to that time, Elgin Sweeping performed that work for the County of Cook under contract for approximately five years.

      **ANSWER:  Defendants admit that plaintiff performed street sweeping services for Cook County in 2006, but they are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 7.**

      8.    Upon information and belief, Tim Dunlap and/or other officials affiliated with local union No. 731 had personal and non-union business relationships with the managers, officers or directors of Elgin Sweeping.

      **ANSWER:  Defendants deny the allegations of paragraph 8.**

      9.    Shortly after being awarded the contract with the County of Cook, Tim Dunlap and Tom Brown, acting on behalf of the union defendants began to stop, question, and harass Plaintiff's employees while those employees were "on the clock" and working on behalf of Plaintiff for various customers or clients of the Plaintiff's.  The individual defendants also began to question and suggest to Plaintiff's current customers that Plaintiff was not in compliance with the collective bargaining agreement and/or otherwise was not paying all applicable union wages, and benefits.

      **ANSWER:  Defendants admit that since on or before April, 2006, defendants Dunlap and Browne have visited plaintiff's facility in Blue Island, Illinois to investigate complaints from plaintiff's employees regarding the payment of wages; that the CBA authorized Local 731 agents to enter plaintiff's establishment for the purposes of adjusting**

3

disputes, investigating working conditions, and inspecting and auditing company records; that defendant Dunlap interviewed plaintiff's employees on various job sites in 2006 and 2007; that at certain times when plaintiff conducted business on its customer's construction job sites in 2006 and 2007 defendant Dunlap gave some of plaintiff's customers written notices that including the following:

> **NOTICE**
> **To whom it may concern:**
>
> **To avoid any claim of misunderstanding, I am hereby advising you in writing that Teamsters Local Union No. 731 has a dispute with Illinois Central Sweeping Service, who we believe does not provide wages, fringe benefits and other economic conditions which are the equivalent of our area standards.**
>
> **Therefore, if and when Local 731 finds Illinois Central Sweeping Service present at the job site, we plan to engage in lawful primary activity and notify the public of the existence of a dispute.**

**Defendants further admit that Dunlap notified some of plaintiffs' customers that plaintiff paid substandard wages and that subcontracting to plaintiff may violate the subcontracting restrictions in the customers' own labor agreements with Local 731. Defendants deny that defendant Dunlap and Browne interfered with plaintiff's employees' activities during their working hours and deny the remaining allegations of paragraph 9 to the extent they are inconsistent with this answer.**

10. As a result of the above mentioned activities of the business agents, Tim Dunlap and Tom Brown, Plaintiff's employees were delayed and hindered from performing their job-related duties on behalf of Plaintiff and its current customers.

**ANSWER:  Defendants deny the allegations of paragraph 10.**

11. As a result of those activities, several customers, fearing labor strife or other disruption, complained to the Plaintiff about its employees being delayed or tardy in performing their duties and questioned Plaintiff about the possibility of labor strife or other problems as the result of the comments of Dunlap and Brown.. Some customers have refused to do business with plaintiff while others have told plaintiff to cease working on sites where plaintiff was hired to perform work.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 11.**

4

12. That continuing into 2007 Dunlop and Brown visited several job sites where Plaintiff was performing work and asserted to Plaintiff's customers that Plaintiff was not in compliance with the collective bargaining agreement, was unwilling to negotiate a new agreement, and was not paying the required wages and fringe benefits required by the agreement.

**ANSWER:  Defendants reallege and incorporate their answer to paragraph 9 herein and deny the allegations of paragraph 12 to the extent they are inconsistent herewith.**

13. Dunlap and Brown sent "notices" to many of Plaintiff's customers, advising those customers that local union No. 731 had a dispute with the Plaintiff because it did not provide wages, fringe benefits and other economic conditions equivalent in the area of the collective bargaining agreement and told Plaintiff's customers that they planned to engage in picketing and other activities and to "notify the public of the existence of a dispute."

**ANSWER:  Defendants reallege and incorporate their answer to paragraph 9 herein and deny the allegations of paragraph 13 to the extent they are inconsistent herewith.**

14. Defendants, through their business agents, also harassed Plaintiff by scheduling multiple audits of Plaintiff's books and records and repeating the audits in an unreasonably short period of time. As a result, defendant gained knowledge of plaintiff's financial condition and that plaintiff could be financially destroyed  by extended interference and harassment of its employees and customers.

**ANSWER:  Defendants deny the allegations of paragraph 14.  Answering further, the fringe benefit funds affiliated with Local 731 conducted audits of plaintiff's book and records pursuant to fringe benefit fund collection policy and practice.**

15. The business agents also came to the Plaintiff's office without notice, and demanded to review Plaintiff's books and records during business hours. While on the premises, the business agents also detained Plaintiff's employees and delayed them from performing "on the clock" work on behalf of Plaintiff and suggested that the Plaintiff was not complying with the collective bargaining agreement or paying "prevailing wage rates on applicable work sites."

**ANSWER:  Defendants admit that, on or about August 1, 2006, when plaintiff's agent Charles DeVries told defendants Dunlap and Browne that plaintiff paid proper wages and directed plaintiff's employees not to speak with Dunlap and Browne, Dunlap requested that plaintiff provide for inspection its books and records necessary to confirm the claim.  Defendants deny that Dunlap and Browne detained or delayed plaintiffs' employees, and defendants deny the remaining allegations of paragraph 15 to the extent they are inconsistent herewith.**

5

16. Alternatively, the local was requested to confirm that Dunlap and others as described above were acting on its behalf, however they have not affirmed that Dunlap and others were acting at the behest of the union (see correspondence attached hereto as exhibit A)

**ANSWER:  No correspondence was attached to plaintiff's amended complaint, and defendants are therefore without knowledge and information sufficient to form a belief as to the truth of paragraph 16.**

## COUNT I – PRELIMINARY INJUNCTION

17. Plaintiff realleges and incorporates paragraphs 1-16 as if fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their answers to paragraphs 1-16 herein.**

18. The harassment, questioning and detention of Plaintiff's employees while working on the clock performing approved and authorized work for Plaintiff's customers threatens and continues to threaten the Plaintiff's business and relationships with customers and damages the professional relationship of Plaintiff with its present and reasonably ascertainable future customers which is a condition of irreparable harm that can not be adequately redressed by an award of monetary damages.

**ANSWER:  Defendants admit that defendants Dunlap and Browne questioned plaintiff's employees but deny that they harassed or detained them.  Defendants deny the remaining allegations of paragraph 18.**

19. Plaintiff's current relationship with its business clients who have been contacted by the defendants has been damaged and destroyed. Those clients have been threatened with labor strife and ordered to produce records of payment to plaintiff.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19.**

20. Without injunctive relief, Plaintiff will fail as a business entity and its professional reputation and the personal reputation of its officers and directors would be irreparably damaged and destroyed. Plaintiff has no adequate remedy at law because it is highly impracticable or impossible to place an adequate value on the loss of goodwill, business opportunity, continued business relations and good reputation in its own industry.

**ANSWER:  Defendants deny that plaintiff is entitled to injunctive relief and deny the remaining allegations of paragraph 20.**

6

21. Plaintiff is likely to succeed on the merits of one or more of its statutory or common law claims.

Wherefore, Plaintiff Illinois Central Sweeping Service, Inc. demands judgment against Tim Dunlap and Tom Brown and those in active participation and concert with them and that they be preliminary enjoined from restraining, harassing and delaying Plaintiff's employees from performing their job related duties "on the clock" and further that they be enjoined from questioning, threatening and harassing current and potential customers and clients, disparaging Plaintiff to those customers and from suggesting or demanding that Plaintiff's customers no longer do business with Plaintiff . Further, defendants should be affirmatively required to ratify, recognize and implement the collective bargaining agreement voted upon, accepted and ratified by plaintiff's employees.

**ANSWER:  Defendants deny the allegations of paragraph 21 and deny that plaintiff is entitled to judgment or any relief.**


## COUNT II – PERMANANT INJUNCTION

22. Plaintiff realleges and incorporates paragraphs 1-21 as if fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their answers to paragraphs 1-21 herein.**


23. The harassment, questioning and detention of Plaintiff's employees while working on the clock performing approved and authorized work for Plaintiff's customers threatens and continues to threaten the Plaintiff's business and relationships with customers and damages the professional relationship of Plaintiff with its present and reasonably ascertainable future customers which is a condition of irreparable harm that can not be adequately redressed by an award of monetary damages.

**ANSWER:  Defendants deny the allegations of paragraph 22.**


24. Plaintiff's current relationship with its business clients who have been contacted by the defendants has been damaged and destroyed. Those clients have been threatened with labor strife and ordered to produce records of payment to plaintiff.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations concerning plaintiff's relationship with its business clients.  Defendants deny they that threatened plaintiff's clients with labor strife and ordered them to produce records of payment to plaintiff.**

7

25. Without injunctive relief, Plaintiff will fail as a business entity and its professional reputation and the personal reputation of its officers and directors would be irreparably damaged and destroyed. Plaintiff has no adequate remedy at law because it is highly impracticable or impossible to place an adequate value on the loss of goodwill, business opportunity, continued business relations and good reputation in its own industry.

**ANSWER:  Defendants deny the allegations of paragraph 25.**

26. Plaintiff is likely to succeed on the merits of one or more of its statutory or common law claims.

Wherefore, Plaintiff Illinois Central Sweeping Service, Inc. demands judgment against Defendants International Brotherhood of Teamsters, Local Union No. 731, its affiliate, and Tim Dunlap and Tom Brown, its business agents and those in active participation and acting in concert with them and that they be preliminary enjoined from restraining, harassing and delaying Plaintiff's employees from performing their job related duties "on the clock" and further that they be enjoined from questioning threatening and harassing current and potential customers and clients, and from disparaging Plaintiff to those customers and from suggesting or demanding that Plaintiff's customers no longer do business with Plaintiff .

**ANSWER:  Defendants deny the allegations of paragraph 26 and deny that plaintiff is entitled to judgment or any other relief.**

### COUNT III – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

27. Plaintiff realleges and incorporates paragraphs 1-26 as if fully set forth herein.

**ANSWER:  Defendants reallege and incorporate their answers to paragraphs 1-26 herein.**

28. As of April 2006, Plaintiff had a reasonable expectation of continuing valid business relationships and enjoying prospective economic advantage with potential customers and clients whose identity was well-known to the defendants.

**ANSWER:  Defendants deny the allegations of paragraph 28.**

29. Plaintiff relies on current and past clients as references who could encourage future and prospective customers to engage Plaintiff's services in the street sweeping industry, including, but not limited to, construction entities performing public and private improvements. Defendants were aware of Plaintiff's current prospective and future customers and of the importance of Plaintiff's business expectancies in a competitive industry.

8

**ANSWER: Defendants deny the allegations of paragraph 29.**

30. The Defendants, through their business agents, purposefully interfered with Plaintiff's current and prospective customers by contacting them and providing false and misleading information about Plaintiff's compliance with the collective bargaining and other prior agreements and intimating or threatening labor strife should those individuals continue to or in the future do business with Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 30.**

31. The business agents' delay and detention of Plaintiff's employees while working on the clock caused tardy performance by those employees which damaged customers' opinions of Plaintiff impairing future, favorable references to prospective clients or customers. The defendants' activities damaged the Plaintiff and interfered with its economic expectancies and business relationships. Those acts also prevented legitimate expectancies from ripening into valid relationships with new customers and the continuation of current relationships in the future.

Wherefore, Plaintiff Illinois Central Sweeping Service, Inc. demands judgment against Defendants International Brotherhood of Teamsters, Local Union No. 731, its affiliate, and Tim Dunlap and Tom Brown, its business agents, in an amount adequate to compensate the Plaintiff.

**ANSWER: Defendants deny the allegations of paragraph 31 and deny that plaintiff is entitled to judgment or any relief.**

### COUNT IV – COMMERCIAL DISPARAGEMENT

32. Plaintiff realleges and incorporates paragraphs 1-31 as if fully set forth herein.

**ANSWER: Defendants reallege and incorporates paragraphs 1-31 as if fully set forth herein.**

33. Defendant, through its employees and business agents, has made disparaging statements regarding the quality of Plaintiff's services to its clients and customers including imputing dishonesty and a lack of contractual performance by the Plaintiff with respect to the collective bargaining and other agreements.

**ANSWER: Defendants reallege and incorporate their answer to paragraph 9 herein and deny the allegations of paragraph 33 to the extent they are inconsistent therewith.**

9

34. As a direct and proximate result of those disparaging statements, Plaintiff has suffered injury to its business reputation.

**ANSWER:   Defendants deny the allegations of paragraph 34.**

35. Defendants' disparaging statements were made with the knowledge of their falsity, inaccuracy and with actual malice.

Wherefore, Plaintiff Illinois Central Sweeping Service, Inc. demands judgment against Defendants International Brotherhood of Teamsters, Local Union No. 731, its affiliate, and Tim Dunlap and Tom Brown, its business agents, in an amount adequate to compensate the Plaintiff.

**ANSWER:   Defendants deny the allegations of paragraph 35 and deny that plaintiff is entitled to judgment or any relief.**

### COUNT V – DEFAMATION

36. Plaintiff realleges and incorporates paragraphs 1-35 as if fully set forth herein.

**ANSWER:  Defendants reallege and incorporates paragraphs 1-35 as if fully set forth herein.**

37. The defendants have knowingly made false and defamatory statements regarding the Plaintiff to his current and future customers by impugning Plaintiff's character for honesty and fair dealing, accusing the Plaintiff of violating the collective bargaining and other agreements and by accusing Plaintiff of failing to pay wages and benefits required by the collective bargaining agreement and other applicable other agreements.

**ANSWER:  Defendants deny the allegations of paragraph 37.**

38. Beginning in January 2007 and continuing to the present, Defendants, through their business agents, contacted at least four of Plaintiff's current customers, making the false and defamatory statements set forth above.

**ANSWER:  Defendants admit that Mr. Dunlap contacted at least four of plaintiff's customers in 2007 but denies the remaining allegations in paragraph 38.**

39. As a direct and proximate result of the foregoing, Plaintiff has suffered injuries to its reputation in the business community and in its own industry.  In that the statements made were false and made with actual malice, Plaintiff is entitled to compensatory and punitive damages.

10

Wherefore, Plaintiff Illinois Central Sweeping Service, Inc. demands judgment against Defendants International Brotherhood of Teamsters, Local Union No. 731, its affiliate, and Tim Dunlap and Tom Brown, its business agents, in an amount adequate to compensate the Plaintiff.

**ANSWER:  Defendants deny the allegations of paragraph 39 and deny that plaintiff is entitled to judgment or any relief.**

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses to the amended complaint:

### First Affirmative Defense

The Complaint fails to state a claim for which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred by preemption under the National Labor Relations Act and the exclusive jurisdiction of the National Labor Relations Board.

### Third Affirmative Defense

Plaintiff's claims are barred by complete preemption under the National Labor Relations Act.

### Fourth Affirmative Defense

Plaintiffs claims are barred by absolute and qualified privilege including but not limited to those arising out of Section 7 of the National Labor Relations Act, legitimate business interest, common interest, and those established by federal and state common law.

### Fifth Affirmative Defense

Plaintiff's claims are barred by the statute of limitations.

### Sixth Affirmative Defense

Plaintiff's claims are barred because the allegedly defamatory or disparaging statements set forth in the amended complaint are statements of opinion.

### Seventh Affirmative Defense

Plaintiff's claims are barred because the allegedly defamatory or disparaging statements set forth in the amended complaint, which are not statements of opinion, are true.

### Eighth Affirmative Defense

Plaintiff's claims are barred because the allegedly defamatory or disparaging statements set forth in the amended complaint are rhetorical hyperbole or puffery.

### Ninth Affirmative Defense

Plaintiff's claims are barred by First Amendment to the United States Constitution and state and federal protections afforded to speech.

### Tenth Affirmative Defense

Plaintiff's claims are barred because Plaintiff suffered no harm to its reputation, business or otherwise, as a result of the allegedly defamatory or disparaging statements contained in the amended complaint or as a result of any other conduct set forth in the complaint.

### Eleventh Affirmative Defense

Plaintiff's claims are barred because defendants were privileged to make the allegedly defamatory or disparaging statements set forth in the amended complaint.

WHEREFORE, Defendants respectfully requests that the Court:

1. Enter an order dismissing the complaint;

2. Enter judgment in favor of Defendants on each count;

3. Grant Defendants their reasonable attorneys fees and costs; and

4. Grant such other relief as the Court deems just and proper.

### COUNTERCLAIM BY LOCAL 731 AND TIM DUNLAP AGAINST PLAINTIFF AND CHARLES DEVRIES, INDIVIDUALLY, FOR DEFAMATION

Defendants/counter-plaintiffs Local 731 and Dunlap, through their attorneys Dowd, Bloch & Bennett, for their counterclaim against plaintiff/counter-defendant Illinois Central Sweeping Service, LLC ("Illinois Central") and third-party defendant Charles Devries, state as follows:

1.  Counter-defendant Illinois Central is an Illinois limited liability company in good standing that does business in Illinois. On information and belief, Illinois Central filed the complaint in this case under the name of Illinois Central Sweeping Service, Inc., which does not exist. On information and belief, Illinois Central has also entered into a collective bargaining agreement with Local 731 under the name of Illinois Central Sweeping Service, Inc.

2.  On information and belief, third-party defendant Devries is a member and manager of Illinois Central. Devries manages and directs the day-to-day operations of Illinois Central, including the management and direction of Illinois Central's employees. Devries also manages and controls, on behalf of Illinois Central, the business's communications with customers, Local 731, and members of the public. Devries resides within this district.

3.  Elgin Sweeping Services, Inc. ("Elgin Sweeping") is an Illinois corporation engaged in a business similar to that engaged in by Illinois Central and is a competitor of Illinois Central. At all times relevant hereto, Elgin has been signatory to collective bargaining agreements with Local 731, the most recent of which is effective by its terms from August 1, 2006 through May 31, 2009.

4.  At all times since at least 2000, Dunlap has been responsible for administering Local 731's collective bargaining agreements with both Illinois Central and Elgin and for otherwise representing the employees of both Illinois Central and Elgin for purposes of

collective bargaining and the adjustment of grievances.

5. Local 731's collective bargaining agreements with Illinois Central and Elgin contain dispute resolution procedures, which include final and binding determinations for resolution of all disputes by a Labor Management Committee ("Grievance Committee").

6. On or about May 26, 2006, Dunlap, on behalf of Local 731 and Elgin's employees, filed a grievance against Elgin's failure to pay prevailing wages to its Local 731-represented employees. On or about August 17, 2006, pursuant to the collective bargaining agreement, a hearing was conducted on the grievance filed by Dunlap against Elgin before the Grievance Committee. The Grievance Committee sustained the grievances and held Elgin liable to employees for unpaid wages in an amount exceeding $150,000. Dunlap, on behalf of Local 731, monitored the collection of money that the Grievance Committee awarded to Elgin employees, and he collected and distributed most of that money to Elgin's employees.

7. On and after February 2006, Dunlap, on behalf of Local 731, informed Devries and Illinois Central member Cheryl Devries that it appeared Illinois Central was not paying the prevailing wages as required under the collective bargaining agreement and Illinois law, and that these wages must be paid. Dunlap thereafter made inquiries to Illinois Central employees concerning receipt of appropriate pay, which inquiries were made known to Devries.

8. On information and belief, on or about August 1, 2006, Devries, speaking on behalf of Illinois Central, made the following statements:

    a. Dunlap had relatives who worked for Elgin;

    b. Dunlap and Local 731 President Terrence Hancock accepted sweeping services from Elgin at their homes free of charge;

    c. Dunlap was "in bed" with Elgin; and

   d.  Dunlap was "coming after" Illinois Central, and was "out to get" Illinois Central, because Illinois Central took a sweeping contract away from Elgin with the Cook County Highway Department.

9. On information and belief, on occasions on and after August 1, 2006, Devries, speaking on behalf of Illinois Central, made the statements alleged in paragraph 8 above to Local 731-represented employees of Illinois Central and others.

10. On or about September 5, 1996, Dunlap, on behalf of Local 731 and Illinois Central's employees, filed grievances against Illinois Central, which included the claim that Illinois Central failed to pay prevailing wages for Local 731-represented employees, as well as for interference with Local 731's performance of its duties as bargaining representative under that agreement.  On or about October 19, 2006, pursuant to the collective bargaining agreement, a hearing was conducted on the grievance against Illinois Central before a Grievance Committee, consisting of Norman Lewis, Dwayne Evenhouse, Terrence Hancock and Thomas Browne.  At the hearing on or about October 19, 2006, Devries, speaking on behalf of Illinois Central, made the statements described above in paragraph 8.

11. The statements made by Devries in paragraphs 8-10 are false.

12. By stating that Dunlap had relatives employed by Elgin, that he accepted free sweeping services from Elgin, that he was "in bed with Elgin," and he was "coming after" or "out to get" Illinois Sweeping because it had obtained a contract at Elgin's expense, Devries and Illinois Central implied that Dunlap was pursuing wage claims against Illinois Central to benefit himself, his relatives and/or Elgin, rather than to enforce the collective bargaining agreement or to properly represent the interests of Local 731 and the employees of Illinois Central, thereby imputing to Dunlap want of integrity in the discharge of his duties as a representative and agent

of Local 731. Such statements are, therefore, defamatory *per se*. These false statements regarding Dunlap are incompatible with the proper conduct of his trade, business, profession or office as employee of a labor organization and have harmed and prejudiced him in that respect.

13. By making the false statement that Dunlap and the Local 731 President accepted free sweeping services from Elgin, Devries and Illinois Central stated that Dunlap had received a thing of value from Elgin, while Dunlap served as a representative of Elgin's employees, which constitutes a felony punishable by fine and imprisonment under Sections 302(a)(1), (b)(1) and (d) of the Labor Management Relations Act, 29 U.S.C. § 186(a)(1), (b)(1) and (d). Such statements are, therefore, defamatory *per se*.

14. Devries and Illinois Central made the statements alleged in paragraphs 8 - 10 with knowledge that they were false or while maintaining serious and actual doubt about the truth of the statements because:

> a. Before making the statements, Devries was aware of the fact that Dunlap had pursued a grievance against Elgin on behalf of Elgin's employees that was similar to the grievance Dunlap was pursuing against Illinois Central, which resulted in substantial monetary liability to Elgin;

> b. At the October 19, 2006 hearing, Dunlap informed Devries and the Grievance Committee that he had no relatives employed by Elgin, that he never received free sweeping services from Elgin, that he had pursued a similar grievance against Elgin and prevailed. Despite Dunlap's statements at the hearing, and without investigating the truth or falsity of the statements, Devries repeated the false statements to Hancock, Brown and to Illinois Central's employees.

16

15. As a direct result of Devries's and Illinois Central's false and defamatory statements, both Local 731 and Dunlap have suffered harm to their reputations as well as the specific loss of support by the employees of Illinois Central. Prior to the publication of the false and defamatory statements, Local 731 enjoyed the support and confidence of the employees of Illinois Central. After such statements, many Illinois Central employees signed a petition submitted to Local 731 seeking the immediate removal of Dunlap as their representative. Since publication of the statements, Illinois Central's employees have refused to cooperate with Dunlap in his efforts to enforce the prevailing wage obligations, or to negotiate a new collective bargaining agreement maintaining uniform wage standards within the sweeping industry. These circumstances prevented Dunlap and Local 731 from effectively enforcing the collective bargaining agreement, prevailing wage obligations, and maintaining uniform minimum wages in the sweeping industry, which further injures Local 731.

WHEREFORE, counter-plaintiffs Local 731 and Dunlap respectfully request that this court:

1. Enter judgment in favor of counter-plaintiffs;

2. Award counter-plaintiffs damages in an amount necessary to compensate them; and

3. Award counter-plaintiffs such other relief as this Court deems just and proper.

                Respectfully Submitted,


                ____/s/  Robert E. Bloch_____
                One of the attorneys for
                defendants/counter-plaintiffs


Robert E. Bloch
Steven W. Jados
DOWD, BLOCH & BENNETT
8 S. Michigan Avenue
19th floor
Chicago, IL 60603
312-372-1361